# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OPTIONSCITY SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRIAN BAUMANN, <br><br> Defendant. | Case No. 15 C 5019 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case arises out of a dispute over a restrictive covenant in an Employment Agreement. Brian Baumann, formerly employed by OptionsCity Software, Inc., went to work for Bolt Trading Company ("Bolt"), and once there, solicited his former customers in an attempt to induce them to come over to Bolt. OptionsCity sued Baumann for breach of contract based on the restrictive covenant in the Employment Agreement Baumann signed at OptionsCity.

Now before the Court is Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction [1-1], p. 21. Defendant Brian Baumann was given notice of this motion and an opportunity to file a written response. Additionally, the parties were fully and fairly heard on the matter on June 19, 2015. This Court, having reviewed the evidence before it and heard the arguments of counsel for both parties, for the reasons set forth below, hereby grants plaintiff's request for a temporary restraining order, and enters and continues the request for a preliminary injunction until July 2, 2015 at 10:30 a.m.

Background & Procedural History

OptionsCity Software, Inc. creates options trading software for use by trading companies and individual options traders. Complaint [1-1], ¶1. It has offices in Chicago, New York and London and clients throughout the United States and in other countries. *Id.*, ¶2. OptionsCity continuously modifies its software for its clients, which means, as a practical matter, that its client relationships tend to be committed and longstanding. Although OptionsCity has only been in business 8 years, most of its clients have been with it for 3 years or longer. Complaint [1-1], ¶¶2-4. The market for options trading software is competitive; OptionsCity spent years and considerable expense building its client base through marketing efforts, advertising, public presentations and through its sales force, which uses knowledge and contacts to market OptionsCity's software. *Id.*, ¶5. OptionsCity also obtains, develops and creates, as part of its business model, confidential and proprietary information, including a customer contact list (which includes contact names, addresses, phone numbers, customer billing and payment information) and a set of unique options trading formulas, which it protects through reasonable security measures. Complaint [1-1], ¶¶6-8. One such measure is the use of employment agreements containing provisions prohibiting former employees from disclosing confidential or proprietary information. *Id.*, ¶8.

Brian Baumann worked as a saleperson for OptionsCity from March of 2011 until October of 2014. [1-1], ¶9. He signed an employment agreement with OptionsCity on March 21, 2011. [1-1], ¶13. The Employment Agreement contains several provisions that are relevant for the Court's purposes today, including an

arbitration provision, a termination provision and a restrictive covenant. Each is discussed below.

Initially, the Employment Agreement includes a "resolution of disputes" provision stating that any "disputes arising under or in connection with this Agreement shall be resolved by third party mediation of the dispute and, failing that, by binding arbitration to be held in Chicago, Illinois in accordance with the rules and procedures of the American Arbitration Association." Employment Agreement, ¶16 (attached to the Complaint). Baumann argues that this provision divests the Court of jurisdiction to entertain the motion for injunctive relief. OptionsCity disagrees, both on the basis of another provision in the Agreement (¶6) and on the basis of binding precedent.

The Court finds that the clause requiring disputes to be resolved through mediation or arbitration does not preclude it from granting preliminary injunctive relief, if such relief is necessary to preserve the status quo and make that mediation or arbitration meaningful. *E.g., Merrill Lynch Pierce Fenner & Smith v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993)("the weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel.")(citing cases). As such, the Court has jurisdiction to grant the requested relief if the proper showing can be made by OptionsCity.

The Employment Agreement between OptionsCity and Baumann also includes a termination clause that allows OptionsCity to "terminate this Agreement upon five (5) days notice to Employee for any reason" and allows Baumann to

"terminate this Agreement at any time upon five (5) days notice to Employer for any reason." Employment Agreement, ¶3. Baumann claims in his response that OptionsCity did not comply with this provision. According to Baumann, on October 23, 2014, his supervisor texted him and told him they needed to talk; he was then summarily fired when he got to the office. Response, p. 3. Baumann also argues that, because he was fired, the restrictive covenant is therefore unenforceable under Illinois law.

OptionsCity disputes that Baumann was fired without cause or notice. In fact, at the hearing on the motion for TRO, counsel clarified that, according to OptionsCity, the company fired Baumann because he was disparaging the company to its customers. OptionsCity also disputes that the law in Illinois precludes enforcement of a restrictive covenant in every case where an at-will employment is fired.

At this point in the proceedings, the Court need not resolve the issue of why Baumann was fired. The circumstances surrounding his termination and the question of whether OptionsCity complied with its obligations under the Agreement – including its obligation to honor the duty of good faith and fair dealing that is implied in every contract – are germane to the ultimate question to be resolved through mediation or arbitration (whether the restrictive covenant is enforceable under the circumstances presented). Accordingly, the issue is not before this Court, except to the extent it impacts OptionsCity's likelihood of success on the merits (as discussed below).

4

Finally (and most importantly), the Employment Agreement between Baumann and OptionsCity included a restrictive covenant provision. Pursuant to this provision, Baumann agreed that he "shall not directly or indirectly:

> during the Employment Period, and for eighteen (18) months thereafter, for any reason, (i) induce any customer or supplier of the Company or any of its subsidiaries or affiliates to patronize or do business with any business directly or indirectly in competition with the business conducted by the Company or any of its subsidiaries or affiliates; (ii) canvass, solicit or accept from any customer or supplier of the Company or any of its subsidiaries or affiliates any such competitive business; or (iii) request or advise any customer or vendor of the Company or any of its subsidiaries or affiliates to withdraw, curtail or cancel any such customer's or vendor's business with the Company or any of its subsidiaries or affiliates.

Employment Agreement, ¶4(b). It is undisputed that, once he was employed at Bolt, Baumann began contacting OptionsCity's customers to entice them to leave OptionsCity and to sign on with Bolt. OptionsCity alleges that Baumann has successfully lured at least one customer to switch to Bolt and has contacted at least two other clients about switching. Emergency Motion [1-1], ¶5 (attached to removal petition).

On June 2, 2015, OptionsCity filed in Cook County Circuit Court a Verified Complaint for Injunctive and Other Relief [1-1]. The complaint alleged that Baumann breached the written employment agreement that he signed with OptionsCity and sought preliminary injunctive relief enjoining Baumann from soliciting clients of OptionsCity. It also alleged that OptionsCity performed all of its obligations under the agreement, [1-1], ¶22. Along with its complaint, it filed an emergency motion for TRO and preliminary injunction.

5

Baumann removed the case on June 9, 2015, before the Cook County Circuit Court could hold its scheduled hearing on OptionsCity's emergency motion. This Court set the case for a status hearing on June 12, 2015, allowed Baumann to file a written response to OptionsCity's motion and then held a hearing on the motion on June 19, 2015. Ultimately, a mediator or arbitrator will have to determine whether the restrictive covenant provision in the Employment Agreement is enforceable against Baumann, given all the surrounding circumstances. As noted previously, however, the merits of that issue are not before the Court at this time. The issue before the Court is whether OptionsCity has demonstrated that it is entitled to a TRO to preserve the status quo for now.

## Discussion & Analysis

A party seeking a temporary restraining order must demonstrate as a threshold matter that: (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992); Fed. R. Civ. P. 65. If the moving party meets this burden, then the Court must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). The Court also considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Storck*, 14 F.3d 311, 314. The Court then weighs all of these factors, "sitting as would a chancellor in equity," *Abbott*, 971 F.2d at 12, and applies a "sliding scale"

approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

A. <u>Likelihood of Success on the Merits</u>

Under the sliding scale approach, a party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). "This is admittedly a low requirement and is simply a threshold question." *Id*. To prevail on its breach of contract claim, OptionsCity will have to prove: (1) the existence of a valid contract; (2) performance of its contractual obligations; (3) breach by defendant; and (4) resulting damages. *Akinyemi v. JP Morgan Chase Bank, N.A.*, 908 N.E.2d 163, 168 (Ill. App. Ct. 2009). It is undisputed that Baumann violated the restrictive covenant provision in his Employment Agreement. Thus, as a practical matter, the analysis on the "likelihood of success" factor merges into an analysis of whether the restrictive covenant provision at issue is reasonable.

Under Illinois law (which undisputedly governs), "a postemployment restrictive covenant is enforceable only if it is reasonable in geographic and temporal scope and it is necessary to protect an employer's legitimate business interest." *Prairie Rheumatology Associates, S.C. v. Francis*, 24 N.E.3d 58, 62 (Ill. App. Ct. 2014). Under Illinois law, before analyzing the reasonableness of a restrictive covenant, however, the Court must first determine that the covenant was ancillary to either a valid transaction or a valid relationship. Here, it is undisputed

7

that it was such a contract. The Court must also determine whether there was adequate consideration to support the covenant. Again, Baumann does not dispute the adequacy of consideration and, given that Baumann worked for Options City for another 3½ years after signing the agreement, the answer to this question is clear. See Prairie Rheumatology, 24 N.E.3d at 62 ("Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration) (citations omitted). The preliminary determinations are both satisfied here.

A restrictive covenant is reasonable only if it: (1) is no greater than is required for the protection of a legitimate business interest of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. *Prairie Rheumatology*, 24 N.E.3d at 62. OptionsCity argues that the restrictive covenant is reasonable in terms of scope and duration. As to the former, it does not restrict Baumann from working for a competitor; it merely precludes him from stealing OptionsCity's confirmed customers. As to the latter, OptionsCity notes that less than 10 months remain on initial 18-month period spelled out in the restrictive covenant. Given that Illinois courts uphold restrictive covenants that last for years, *e.g., Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85 (Ill. 2006), the duration is ostensibly reasonable.

Nevertheless, Baumann argues that, given the nature of the options trading industry, the restrictive covenant effectively precludes him from employment within his chosen field. Baumann argues that there is a defined universe of options trading software customers and that companies like Bolt and OptionsCity are constantly competing for the same clients. He argues, in essence, that his value to

8

Bolt stems from his ability and willingness to go after the "big fish" clients already signed by OptionsCity. At the hearing on the motion, counsel represented that, if a TRO were entered and if Baumann were precluded from soliciting OptionsCity's customers, he would likely be fired.

The Court finds that OptionsCity has demonstrated that it has a better than negligible chance of succeeding before a mediator or arbitrator on its ultimate claim. Initially, the Agreement itself includes a provision that the parties "agree and acknowledge that the restrictions contained in [the restrictive covenant and confidentiality provisions] are reasonable in scope and duration and are necessary to protect the Company . . . ." Agreement, ¶6. But, even without this, OptionsCity is more likely than not to be able to persuade a mediator that the restrictive covenant should be enforced under the circumstances. To be sure, there are facts to suggest that OptionsCity may not succeed. But, on balance, the Court finds that OptionsCity has met its burden here for the purposes of a TRO. The provision at issue is limited in scope and duration, and it does not preclude Baumann from soliciting anyone but OptionsCity's confirmed customers. In short, there is a better than negligible chance that OptionsCity will be able to persuade the ultimate trier of fact that its restrictive covenant is enforceable.

B.  Irreparable Harm

With regard to the adequacy of damages and irreparable harm, OptionsCity argues that damages would be difficult to quantify and it would never be able to undo the loss of key clients and the disclosure of its confidential information. Baumann argues that OptionsCity can quantify its damages because it represented

in a cease and desist letter that Baumann's actions had caused it to incur more than $125,000 in damages. He also argues that the information OptionsCity seeks to protect is available from other sources (there is another former OptionsCity employee at Bolt and the customer lists are "effectively public," response, p. 11).

In response, OptionsCity argues that the damages it suffers when Baumann steals a client may be easy to calculate for a given period of time, but that there remains other aspects to the harm that are not so easily quantifiable. OptionsCity argues, the nature of the options trading software industry is such that client relationships are longstanding, which means that lost income extends over a period of years. Additionally, losing customers impacts the company's overall value to potential investors or purchasers, who want to see growth, not shrinkage in the company's client base. OptionsCity also argues that, although some information about its customers may be available through an Internet search, much of it is not. For example, a Google search may reveal that NASDAQ is a client, but it would not reveal the numerous traders who trade under NASDAQ who have independent contracts with an options trading software supplier. Such information, however, would be known to former employees.

Based upon the entire record, the Court finds that OptionsCity has demonstrated that it will suffer irreparable harm in the absence of temporary injunctive relief. First, the Employment Agreement specifically provides that a breach of the restrictive covenant is acknowledged to cause irreparable harm. Agreement, ¶6. There is no question that Baumann violated the provision. Beyond that, given the submissions and arguments by counsel concerning the nature of the

industry, the Court is persuaded that a customer who is induced to leave OptionsCity for Bolt will not easily be won back and that the loss of customers has a bigger (and less easily quantified) impact on the company beyond the lost revenue stream.

C. <u>Balancing of Harms</u>

In assessing the potential harm to Baumann, the Court applies a "sliding scale" – that is, the more likely OptionsCity is to win, the less heavily the balance of harms needs to weigh in its favor; the less likely OptionsCity is to win, the more the balance needs to weigh in its favor. *Girl Scouts of Manitou Council*, 549 F.3d at 1086. "Even if a plaintiff's suit appears to have merit, an injunction should not necessarily issue if the harm to the defendant would substantially outweigh the benefit to the plaintiff." *Michigan v. U.S. Corps of Army Engineers*, 667 F.3d 765, 789 (7th Cir. 2011).

The Court finds that the balance of harms, at least in the short-term favors OptionsCity. There is no question that Baumann has solicited OptionsCity's customers in direct violation of the restrictive covenant and that he has no intention of curtailing his behavior. Thus, there is no question that, absent relief, OptionsCity will continue to suffer irreparable harm. At the same time, there is nothing but conjecture to suggest that Baumann will suffer harm in the immediate future. Over the period of the TRO, he may have to work harder to develop his own prospective clients, but that is not enough to outweigh the harm that will come to OptionsCity.

Additionally, the Court is persuaded that, absent relief, any mediation or arbitration proceeding will be meaningless, as the damage caused by Baumann's intentional violation of the restrictive covenant will be complete and difficult, if not impossible, to reverse.

D.   Harm to the Public

Baumann argues that the restrictive covenant harms the public in that it restrains trade.  In particular, Baumann argues that the restrictive covenant precludes him from accepting business from OptionsCity customers even if they come to him, without solicitation or overture.  OptionsCity is not seeking to enjoin such conduct in its TRO motion.  Thus, that is a consideration for the mediator, but not for this Court.  No harm to the public is demonstrated on the record before this Court.

E.   Bond

Federal Rule of Civil Procedure 65(c) requires a party obtaining a temporary restraining order to post a bond sufficient to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The purpose of such a security is to compensate the defendant for the harm caused by an injunction should the defendant ultimately prevail on the merits. *Ty, Inc.*, 292 F.3d at 516 (7th Cir. 2002). Based upon the record, imposition of a bond is unnecessary in this matter. First, the parties' Employment Agreement permits the company to seek injunctive relief relating to a breach of the restrictive covenant without posting a bond.  Second, the TRO entered today is short-lived, expiring in

14 days; the Court is not persuaded that Baumann will suffer sufficient harm during that period to warrant a bond.

Conclusion

Based upon the briefs and affidavits filed by the parties and the arguments of counsel in open court, the Court finds that OptionsCity has sustained its burden and demonstrated that it is entitled to a temporary restraining order. Accordingly, the Court grants OptionsCity's emergency motion for a temporary restraining order. Defendant Brian Baumann is temporarily enjoined from soliciting OptionsCity's customers. This Temporary Restraining Order is entered at 4:45 p.m., on this 19th day of June, 2015, and shall remain in effect (unless extended by agreement of the parties) until 4:45 p.m. on July 3, 2015. The request for a preliminary injunction is hereby entered and continued for further evidentiary proceedings at 10:30 a.m. on July 2, 2015 in Courtroom 1725.

Dated: June 19, 2015

ENTERED:

_____
John Robert Blakey
United States District Judge